UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| PHYLLIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-108-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF PARIS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the defendants' motion for summary judgment regarding Plaintiff Phyllis Williams' claims based on 42 U.S.C. § 1983. [Record No. 34]   Because Williams has not alleged any facts demonstrating that Defendant David Thompson violated her constitutional rights, Thompson is entitled to summary judgment on all of Williams' § 1983 claims.  Williams also has not presented any proof that the City of Paris failed to properly train its officers.  As a result, the motion for summary judgment will be granted insofar as it seeks dismissal of Williams' failure to train claim.  Finally, Defendant Jon Humphries is entitled to qualified immunity regarding Williams' First Amendment claim and summary judgment is also appropriate regarding her Fourteenth Amendment claim against the defendants.  However, the motion will be denied insofar as the City and Humphries seek summary judgment regarding Williams' Fourth Amendment claims.

**I.**

On the evening of July 4, 2014, Thompson and Humphries, police officers employed by the City of Paris, were dispatched to 1000 Crestwood Heights after a 911 call was received from that location.  [Record Nos. 34-1; 38, pp. 13-14]  The parties vigorously dispute what happened once police arrived.  For the purposes of evaluating the defendants' motion for summary judgment, the Court accepts the plaintiff's version of the facts as true.  *See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

When police arrived, Williams testified that she and her adult son, Cody Turner, were the only ones at the residence.  [Record No. 37, p. 10]  Turner was lounging on a hammock outside with his dog while Williams was inside watching television.  *Id.* at 39.  Williams was first alerted to the police's arrival when "Cody came in the house and said, mom, the police are here."  *Id.* at 40.  As she approached the front door, Williams saw Officer Humphries opening the screen door, preparing to enter the house.  *Id.* at 40-41.  Williams told Officer Humphries that he was not allowed in her house and demanded that he shut the door.  *Id.* at 41.

During her deposition, Williams offered the following testimony:

Q.  When you told Officer Humphries that – to shut the door, that he was not allowed in the house, what did he say or do?

A.  I can come in your house.

Q.  What happened next?

A.  I said, no, you cannot come in my house.

> Q.  What happened next?
>
> A.  He got angry.  He said, yes, I can.  On a 911 distress call, I can come in your house.  I said, no.  There's no distress here.
>
> Q.  What happened next?
>
> A.  Officer Humphries got angry, come on in the door and shoved my son against the wall.  Cody had a glass of chocolate milk in his hand, spilled chocolate milk all over my wall, all over the floor.  This other officer came in behind him and grabbed Cody and shoved him.  When he come in behind him, pushed me backwards.  I hit the door, almost went down the steps.  I grabbed my phone, and I started videoing.

*Id.* at 43.

The officers handcuffed Turner and then walked him out of the house and into the yard toward their police cruisers.  *Id.* at 51.  Williams continued recording the officers as she followed them.  *Id.*  Williams maintains that Turner did not resist arrest, although she does admit that he was saying, "I didn't do a f_ _ _ing thing" as officers walked him out of the house.  *Id.* at 49, 51-52, 55.  Williams claims that, at some point on the way to the cruisers, Officer Humphries turned around and told her that he would put her in jail if she did not stop the recording.  *Id.* at 58.  Williams responded that she was not doing anything except recording the officers as they arrested her son.  *Id.*  Williams alleges that Officer Humphries then "walks up to me, grabs me by my elbows, slides his hands as hard as he could, jerks my arms, pops my thumbs and throws my phone up in the air.  Throws it in the cruiser and says, it's evidence now, b_ tch."  *Id.* at 58-59.  The officers eventually placed Turner in the police cruiser and left with the phone.  Williams refused to give the police consent to search her phone, and the phone was not returned until early September.  *Id.* at 35, 74.  Officer Humphries claims that the phone was booked into

evidence but its contents were never accessed.  [Record No. 38, pp. 21-23]  Conversely, Williams asserts that when she received the phone in September, several videos had been deleted, including the video of her son's arrest.  [Record No. 37, pp. 75-77]

Turner later pled guilty in Bourbon District Court to menacing, disorderly conduct in the second degree, and resisting arrest.  [Record No. 34-3; 36, pp. 55-56]  On March 26, 2015, Williams filed this action in Bourbon Circuit Court against the City of Paris, Officer Thompson, and Officer Humphries.  [Record No. 1-1]  In Counts I and II of her Complaint, Williams claims that she is entitled to compensatory and punitive damages for assault and battery.  *Id.* at 3.  Williams also asserted two additional claims under 42 U.S.C. § 1983.  *Id.* at 4.  She alleges that the defendants violated the Fourth Amendment by unlawfully seizing and searching her phone without a warrant.  *Id.*  Williams also contends that the City of Paris is liable for its failure to adequately train and supervise its police force.  *Id.*

Williams amended her Complaint after the defendants removed the case to this Court to include two additional § 1983 claims.  [Record Nos. 1; 19]  Williams alleges in her Amended Complaint that the defendants violated her First Amendment right to record police officers performing their duties and that the defendants violated her Fourteenth Amendment right to due process by confiscating and retaining her phone.  [Record No. 19, pp. 3-4]

## II.

The Court should grant summary judgment "if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).  In deciding whether to grant a motion for summary judgment, the Court must view all the facts and draw all inferences from the evidence in a light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The defendants claim that summary judgment is appropriate for all of Williams' claims based on 42 U.S.C. § 1983.  [Record No. 34]

### III.

Williams does not specify in her original or amended Complaints whether she is suing Officer Humphries and Officer Thompson in their individual capacities, their official capacities, or both.  [Record Nos. 1; 19]  "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")  Suing the City of Paris and its officers in their official capacities would be redundant.  Therefore, the Court will assume for the purpose of this motion that Williams intended to sue the officers in their individual capacities.  Moreover, the defendants' motion for summary judgment

- 5 -

addresses the officers' individual liability, and the plaintiff did not correct that reading of the Complaint in her response to the defendants' motion.  [Record Nos. 34; 42]

### A.    Qualified Immunity for Claims Against Humphries

"The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In other words, if no reasonably competent officer would have taken the same action, then qualified immunity is inappropriate.  *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007).  However, immunity is appropriate where officers of reasonable competence could disagree about the action's legality.  *Id.*  "The doctrine protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### 1.    First Amendment Claim

The plaintiff claims that Officer Humphries' violated her First Amendment right to record police activity by seizing her cellphone while she was recording her son's arrest.  [Record No. 19, pp. 3-4]  In response, Officer Humphries argues that the right to record police officers is not "clearly established," such that a reasonable officer would have known that he was violating Williams' First Amendment rights.  [Record No. 34, pp. 6-8]

In determining whether a constitutional right is clearly established, this Court must first look to the Supreme Court's decisions, then the decisions of the United States Court

of Appeals for the Sixth Circuit, then to the decisions of this court and other district courts within the Sixth Circuit, and lastly to the decisions of other circuits. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). The parties do not dispute that this issue has not been addressed by the Supreme Court or the Sixth Circuit. This Court, however, addressed this precise issue shortly before the July 4th incident in this case. *See Williams v. Boggs*, No. 6:13-65-DCR, 2014 WL 585373 (E.D. Ky. Feb. 13, 2014). In *Williams*, this Court held that the right to film a police officer is not clearly established. *Id.* at \*6. In reaching that conclusion, the Court first considered cases from the First, Seventh, and Eleventh Circuits finding that the right existed. *Id.* at \*5. The Court also considered cases from other federal circuits finding that the right was not clearly established. *Id.*

Williams cites six cases from other circuits to support her theory that the right to film police is clearly established. [Record No. 42, p. 5] Notably, three of those cases were considered by this Court in *Williams*, 2014 WL 585373, at \*5. *See Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). The defendants cite a number of more recent federal decisions concluding that the right to record police is not clearly established. [Record No. 43, pp. 3-4] The fact that the parties have been able to find a number of conflicting cases beyond those considered in *Williams* only confirms this Court's prior determination. Simply put, "a disagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established." *Williams,* 2014 WL 585373, at \*6 (quoting *Miller v. Colson*, 694 F.3d 691, 698 (6th Cir. 2012)).

The plaintiff also notes that on, July 4, 2014, one court within this Circuit determined that the right to record police is a clearly-established First Amendment right. [Record No. 42, p. 5]  *See Crawford v. Geiger (Crawford I)*, 996 F. Supp. 2d 603, 615 (N.D. Ohio 2014) ("[T]here is a First Amendment right to openly film police officers carrying out their duties.").  But the *Crawford* court conducted a more thorough analysis of the relevant case law and reversed itself on this issue after July 4th.  *See Crawford v. Geiger (Crawford II)*, 131 F. Supp. 3d 703, 715 (N.D. Ohio 2015), *appeal docketed*, No. 15-4181 (6th Cir. Oct. 29, 2015) ("On further consideration in connection with the instant motions, however, I believe the right openly to film police carrying out their duties is not so clear cut that it is proper in *this* case to withhold qualified immunity as to the First Amendment claim.").  Because *Crawford I*, not *Crawford II*, was in effect at the time of the July 4th incident, the plaintiff argues that the right was clearly established according to at least one court within this Circuit.  [Record No. 42, p. 5]  Williams is correct that the clearly-established inquiry requires the court to consider decisions at the time the action in question was taken.  *See Pearson*, 555 U.S. at 244.  However, the undersigned agrees with the defendants' analysis of the *Crawford* cases:

> [W]hat police officers were left with on July 4, 2014, in the Sixth Circuit were two recent rulings – one issued on February 13, 2014 (i.e., *Williams, supra*), and one issued on February 10, 2014 (i.e. *Crawford I*) – that conflicted on the issue [of] whether there was a clearly established right under the First Amendment to record police.

[Record No. 43, p. 4]  A constitutional rule is certainly not clearly established where courts in other circuits and courts in this Circuit have issued conflicting opinions.

Finally, Williams relies on a Department of Justice letter dated May 14, 2012, addressing the case of *Christopher Sharp v. Baltimore City Police Department, et al.* [Record Nos. 42, p. 6; 42-1]  Because the Department of Justice has taken the position that the First Amendment protects an individual's right to film police, Williams argues that the right is clearly established.  However, the Department of Justice is not a court of law, and its policy statements have no binding authority.  As discussed above, the clearly-established inquiry requires courts to look at Supreme Court, federal circuit court, and federal district court precedent.  *See Higgason*, 288 F.3d at 876.  Letters from the Department of Justice do not establish constitutional law, nor do they bind local law enforcement agencies.  In summary, Officer Humphries has shown that the right to film police was not clearly established.   Accordingly, he is entitled to the protection of qualified immunity.

As for Williams' First Amendment claim against the City of Paris, "a municipality cannot be made liable under 42 U.S.C. § 1983 on a *respondeat superior* basis."  *Kentucky v. Graham*, 473 U.S. 159, 168 (1985).  In other words, even if Officer Humphries did violate a protected constitutional right, the City of Paris cannot be held liable for the violation simply because Humphries is a city employee.  "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks and citation omitted).  Here, the plaintiff has not alleged that any City of Paris police officer has unlawfully seized a cellphone other than on this one occasion, nor has she presented any proof tending to show that the city has a policy or custom of

infringing on the First Amendment rights of its citizens.  Accordingly, the defendants' motion for summary judgment will be granted with respect to Williams' First Amendment claims against the City of Paris.

### 2.    Fourth Amendment Claim

Williams also claims that the warrantless seizure of her phone violated her Fourth Amendment rights.  [Record No. 19, p. 4]  But Officer Humphries argues that he is entitled to qualified immunity on that claim as well.  [Record No. 34, pp. 11-12] According to Officer Humphries, the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014), "clearly established that the warrantless seizure of a cell phone in the absence of exigent circumstances violates the Fourth Amendment."  *Id.* at 11. Because *Riley* was decided a mere ten days before the seizure of Williams' phone, Officer Humphries contends that he did not have time to learn about and adjust to the newly-established law.  *Id.* at 11-12.  In deciding whether a rule is "clearly established," the Court must recognize that officials need "some time to adjust to and learn about judge-made law as it evolves . . . ."  *Lintz v. Skipski*, 25 F.3d 304, 306 (6th Cir. 1994). The Sixth Circuit and other circuits "have struggled to decide how long after a decision [] officials have to become familiar with 'the law,' and no rule has emerged."  *Id.* Nevertheless, this Court need not decide whether ten days was sufficient for Officer Humphries to adjust to the Court's decision in *Riley* because the constitutional law at play in this case was clearly established long before *Riley*.

In *Riley*, the Court determined "whether the police may, without a warrant, search digital information on a cell phone seized from an individual who has been arrested."

134 S. Ct. at 2480.  However, *Riley* is distinguishable.  Unlike the plaintiffs in *Riley*, Williams' phone was not seized during a search incident to her arrest because Williams was not arrested.  Additionally, this case is less about the search of the phone and more about the seizure.  In this case, the defendants claim that they never accessed the data on Williams' phone (i.e., the primary issue addressed by the Court in *Riley*).  The question here is whether police were allowed to seize Williams' property without a warrant and without her consent, and that issue has been addressed before *Riley*.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures of property by the government."  U.S. Const. amend. IV.  Over twenty years ago, the Supreme Court determined that for Fourth Amendment purposes, a seizure occurs when "there is some meaningful interference with an individual's possessory interests in [the] property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Officer Humphries undoubtedly seized Williams' cell phone when he confiscated and caused it to be placed into evidence at the City of Paris' police department.  It was also well-established on July 4, 2014, that a seizure of property is subject to Fourth Amendment scrutiny regardless of whether the property is subsequently searched.  *Soldal v. Cook Cnty. Ill.*, 506 U.S. 56, 68 (1992).  Accordingly, even if Officer Humphries is correct that the phone's contents were never searched, Officer Humphries' seizure of the phone is subject to the Fourth Amendment's protections.

The Supreme Court has recognized for over thirty years that a warrantless search or seizure is per se unreasonable and violates the Fourth Amendment if it does not fall

within one of the narrow exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971). The parties agree that police did not obtain a warrant to seize or to search Williams' phone. [*See* Record No. 38, p. 33] Regardless of the outcome of the "clearly-established" inquiry, Officer Humphries asserts that his seizure of William's phone fell under the exigent circumstances exception. The exigent circumstances exception is also not a new invention. *See Chambers v. Maroney*, 399 U.S. 42, 51 (1970) ("Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search.").

During his deposition, Officer Humphries testified that he took the phone from Williams because he was concerned that she would delete the video once she realized that it showed her son resisting arrest. [Record No. 38, p. 21] The likelihood that a suspect will destroy evidence has long been recognized as an exigent circumstance that may justify a warrantless seizure of property. *See Roaden v. Kentucky*, 413 U.S. 496, 505 (1973) ("Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action withou[t] prior judicial evaluation."). On July 4, 2014, any reasonable officer would have known that the warrantless seizure of Williams' cell phone without her consent was unlawful absent an exception to the warrant requirement. By invoking the exigent circumstances doctrine, Officer Humphries demonstrated that he understood a warrant was generally required for the cell phone's seizure unless an exception applied.

Williams' and Officers Humphries' conflicting version of events reveals a genuine issue of material fact regarding whether exigent circumstances justified the phone's

seizure.  Officer Humphries testified that Turner resisted arrest and any video of the event would be evidence supporting the charges against him.  [Record No. 38, p. 21]  Once Williams watched the video and realized that it might implicate her son in a crime, Officer Humphries contends that Williams was likely to destroy the evidence by deleting the video.  *Id.*  Conversely, Williams testified that her son did not resist arrest and the video was exculpatory evidence.  [Record No. 37, pp. 49, 51-52]  Thus, she argues that "[i]t would make no sense" for her to destroy the evidence.  [Record No. 42, p. 7]  Since the video of the incident is no longer available, this issue is certainly in dispute and therefore summary judgment is not appropriate regarding this claimed violation.  Also, because the defendants have not explained why the City of Paris is entitled to summary judgment on this issue, Williams' Fourth Amendment claim against the City also remains pending.

### B.    Constitutional Claims Against Thompson

The plaintiff also asserts First and Fourth Amendment claims against Officer Thompson based on the warrantless seizure of her phone.  [Record No. 19, pp. 3-4]  Officer Thompson argues that he is entitled to summary judgment on both claims because the plaintiff has not alleged any facts tending to show that *he* seized the phone.  [Record No. 34, pp. 5, 9]  The plaintiff does not at all address this issue in her response to the motion for summary judgment.  [Record No. 42]  Further, the plaintiff testified during her deposition that she never saw Officer Thompson touch the phone.  [Record No. 37, p. 67]  She also testified that she did not recall Officer Thompson saying anything to her or Turner during the July 4th encounter.  *Id.* at 69.  Officer Thompson has met Rule 56's

requirements for summary judgment by showing that there is no genuine issue of material fact regarding the plaintiff's First and Fourth Amendment claims against him and that he is entitled to judgment as a matter of law on those claims.

C.     **Fourteenth Amendment Claims**

The plaintiff further contends that the defendants violated her Fourteenth Amendment right to due process by confiscating and retaining her phone. [Record No. 19, p. 4] The defendants claim that the Fourth Amendment is a more appropriate avenue for Williams to challenge the police's seizure of her phone. [Record No. 34, pp. 13-14] Because Williams has also brought a Fourth Amendment claim based on the seizure, the defendants argue that they are all entitled to summary judgment on her Fourteenth Amendment claim. *Id.*

Where the Fourth Amendment explicitly protects against the conduct at issue, claims based on that conduct should be analyzed under the Fourth Amendment, rather than the more generalized notion of "substantive due process" found in the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). Williams challenges the police's unlawful seizure of her phone but, as explained above, the Fourth Amendment protects her from unreasonable search and seizure. Thus, her substantive due process claim is unnecessary under *Graham*.

- 14 -

On at least one occasion, the Sixth Circuit has recognized that Fourth and Fourteenth Amendment claims can coexist under certain circumstances. In *Wilson v. Collins*, 517 F.3d 421, 423 (6th Cir. 2008), the plaintiff challenged the involuntary collection and retention of his DNA by the Ohio Department of Rehabilitation and Correction. Even though the plaintiff's substantive due process claim was rejected on its merits, the Court held that he could pursue his Fourteenth Amendment claim without transgressing *Graham*. *Id.* at 428. However, unlike the DNA in *Wilson*, the phone in this case was not indefinitely retained by the government. The police have now returned Williams' phone to her, and the only harm she alleges is the initial seizure of the phone and the search and destruction of some its contents. The Fourth Amendment's protection against unreasonable searches and seizures protects against that kind of harm. The plaintiff has not provided the Court with any reason why *Graham* does not apply to her Fourteenth Amendment claim.

Williams also seems to assert that her procedural due process rights were violated when the police "irrevocably deprived [her of her] recordings without first providing notice and opportunity to object." [Record No. 42, p. 7] For support, Williams cites *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Id.* In *Eldridge,* 424 U.S. at 323, the Supreme Court considered whether the plaintiff was entitled to an evidentiary hearing prior to the termination of his Social Security disability benefit payments. Unlike the seizure of property, the termination of Social Security benefits is not covered by the Fourth Amendment. In *Eldridge*, the Constitution's due process provisions were the only

avenue available to the plaintiff for obtaining the relief he sought. That is not the case here.

Unlike in *Wilson* and *Eldridge*, Williams has not shown that her harm is ongoing, requiring further process. In fact, she testified during her deposition that she received her phone back after the judge in her son's case held a hearing on the matter. [Record No. 37, pp. 73-74] According to Williams, the judge "signed an order to release my phone." *Id.* at 74. Williams has not specified what other procedures she believes that she was due. Nor has she addressed the defendants' argument that the Fourth Amendment provides sufficient protections for the harm that she alleges. Accordingly, summary judgment will be granted regarding the plaintiff's Fourteenth Amendment claim.

### D.    Failure to Train Claim

Finally, the City of Paris challenges Williams' claim that it failed to adequately train and supervise its police force. [Record No. 34, pp. 14-15] "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact." *Harris*, 489 U.S. at 388. It is not enough to merely allege that the City is responsible for the police's training. *Id.* at 389. The question is whether the training the police officers received was adequate, "and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.*

The defendants have provided a substantial amount of evidence regarding the training that Paris police officers receive. In their responses to the plaintiff's interrogatories, the City explained that its officers are required to attend "basic law

enforcement training conducted by the Kentucky Department of Criminal Justice Training, which typically consists of 768 hours of classroom and hands-on training at the Police Academy at Eastern Kentucky University . . . ." [Record No. 34-5, p. 2]  Officers are required to obtain at least 40 hours of additional training annually after they attend the academy.  *Id.*  Officer Humphries testified to the same training requirements during his deposition.  [Record No. 38, pp. 8-9]  In fact, Humphries even testified that in his training, he learned that citizens have a right to film his activities.  *Id.* at 11.  He also testified that he learned that he normally needs to obtain a search warrant to get evidence from a cellphone.  *Id.* at 11-12.

The defendants contend that the plaintiff has not at all explained how the training the officers received was lacking.  [Record No. 34, p. 14]  Upon review of the record, the undersigned agrees that the plaintiff has failed to allege any facts tending to show that the training was deficient.  When asked during her deposition about what type of training city police officers receive, Williams only stated that the police were expected to "protect and serve."  [Record No. 37, pp. 36-37]  She has failed to offer anything beyond this assertion in support of her failure to train claim.  Therefore, the defendants' motion to dismiss will be granted as to this claim.

### E.    Remand to State Court

The defendants request that the case be remanded back to state court for adjudication of the remaining assault and battery claims if the Court grants the motion for summary judgment.  [Record No. 34, pp. 15-17]  The plaintiff agrees that remand would be proper in that event.   [Record No. 42, p. 8]   However, the plaintiff's Fourth

Amendment claims against the City and Officer Humphries remain pending.  Thus, remand of the state law claims is not appropriate.

**IV.**

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment [Record No. 34] is **GRANTED**, in part, and **DENIED**, in part.

This 4th day of May, 2016.



Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**